

FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

2007 MAR -1 P 1: 34

| | | |
|---|---|---|
| J.J., and all others similarly situated, | : | Case No. C 2 0 7 1 7 0 |
| by her next friend Sheila Vanbarclume | | |
| c/o Children's Law Center, Inc. | : | Judge JUDGE SMITH |
| 104 East Seventh Street | | |
| Covington, Kentucky 41011, | : | MAGISTRATE JUDGE ABEL |
| | | |
| K.M., and all others similarly situated, | : | |
| c/o Children's Law Center, Inc. | | |
| 104 East Seventh Street | : | |
| Covington, Kentucky 41011, | | |
| | : | |
| J.R., and all others similarly situated, | | |
| by her next friend | : | |
| c/o Children's Law Center, Inc. | | **CLASS ACTION COMPLAINT** |
| 104 East Seventh Street | : | **FOR DECLARATORY AND** |
| Covington, Kentucky 41011, | | **INJUNCTIVE RELIEF** |
| | : | |
| A.G., and all others similarly situated, | | |
| by his next friend Maria Santiago | : | |
| c/o Children's Law Center, Inc. | | |
| 104 East Seventh Street | : | |
| Covington, Kentucky 41011, | | |
| | : | |
| J.S., and all others similarly situated, | | |
| by his next friend David Sanders | : | |
| c/o Children's Law Center, Inc. | | |
| 104 East Seventh Street | : | |
| Covington, Kentucky 41011, | | |
| | : | |
| P.T., and all others similarly situated, | | |
| by her next friend | : | |
| c/o Children's Law Center, Inc. | | |
| 104 East Seventh Street | : | |
| Covington, Kentucky 41011, | | |
| | : | |
| Plaintiffs, | | |
| | : | |
| V. | | |

OHIO DEPARTMENT OF
YOUTH SERVICES,                                    :
51 North High Street
Columbus, Ohio 43215,                              :

THOMAS STICKRATH,                                  :
Director of Youth Services,
in his official capacity only,                     :
51 North High Street
Columbus, Ohio 43215,                              :

RELEASE AUTHORITY,                                 :
A Bureau of the Ohio
Department of Youth Services,                      :
51 North High Street,
Columbus, Ohio 43215,                              :

SHARON HAINES,                                     :
Chairperson, Release Authority,
in her official capacity only,                     :
51 North High Street
Columbus, Ohio 43215,                              :

C.Q. MORRISON,                                     :
Release Authority Member,
in his official capacity only,                     :
51 North High Street
Columbus, Ohio 43215,                              :

TERRY KENNEDY MANCINI,                             :
Release Authority Member,
in her official capacity only,                     :
51 North High Street
Columbus, Ohio 43215,                              :

JENNIFER FEARS,                                    :
Release Authority Member,
in her official capacity only,                     :
51 North High Street
Columbus, Ohio 43215,                              :

2

NORM HILLS,                                    :
Release Authority Member,
in his official capacity only,                 :
51 North High Street
Columbus, Ohio 43215,                          :

     Defendants.                               :

---

## INTRODUCTORY STATEMENT

1.     This is a civil rights class action lawsuit challenging the policy, practice, and custom of the Ohio Department of Youth Services ("ODYS"), by and through its director, Thomas Stickrath; its Release Authority; and the members of the Release Authority, Sharon Haines, C.Q. Morrison, Terry Kennedy Mancini, Jennifer Fears, and Norm Hills, of denying incarcerated juveniles a meaningful opportunity to be released from custody by arbitrarily and unilaterally extending the judicially imposed minimum sentences these youth are required to serve and by requiring youth to complete programming as a condition of release without making that programming available. Plaintiffs bring this action for declaratory, injunctive, and other equitable relief on behalf of themselves and all other juveniles similarly situated who are or will in the future be committed to ODYS and will be subject to minimum sentence enhancement in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, related provisions of the Ohio Constitution, and independent federal and Ohio laws.

2.     Plaintiffs bring this action under the federal Civil Rights Act, 42 U.S.C. § 1983, to redress the violation by Defendants, acting under color of state law, of rights guaranteed to Plaintiffs under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution as more particularly set forth in this Complaint.

## JURISDICTION

3.      Jurisdiction over Plaintiffs' claims for declaratory and injunctive relief is proper in this Court pursuant to 28 U.S.C. §§ 1331(a), 1343(3), and 1343(4).

4.      This Court has supplemental and pendent jurisdiction pursuant to 28 U.S.C. § 1367 to review and decide Plaintiffs' state law claims.

5.      Venue is proper in this district and division as the various acts which form the basis of this complaint occurred within the Southern District of Ohio, Columbus Division.

## PLAINTIFFS

6.      Plaintiff J.J., a 16 year old female, is presently being housed at the Scioto Juvenile Correctional Facility after being committed to ODYS. She was sentenced to a judicially imposed minimum of 6 months incarceration for a fourth-degree felony receiving stolen property charge. The Release Authority, however, recalculated her minimum sentence to a period of 8 months incarceration based upon a prior assault or domestic violence conviction J.J. contends does not exist. She has not been given any opportunity to challenge or contest the Release Authority's extension of her judicially imposed minimum based upon the inclusion of a non-existent conviction. Her opportunity to be reviewed for release has therefore been extended for an additional two months without cause or explanation.

7.      Plaintiff K.M., an 18 year old African-American male, is presently incarcerated in ODYS custody at Marion Juvenile Correctional Facility. He was sent to ODYS in November of 2006 with the expectation that he would serve either a 30 day or a 90 day minimum sentence for revocation of his parole. At his revocation hearing, K.M. was told by the juvenile court judge presiding over his case that he was sentenced to a minimum of 90 days in an ODYS facility, but the

4

initial paperwork he was provided at intake indicated that he need only serve a 30 day minimum. Despite these short judicially imposed minimum terms, K.M. was recently informed by the Release Authority that he will not be released until May of 2007 at the earliest. The document K.M. received from the Release Authority computes his minimum sentence as follows:

| | |
|---|---|
| Court time | 90 |
| Revocation matrix time | 45 |
| Discipline time | 0 |
| Other time | 135 |
| Total time | 180 |

As an explanation for the "other time" imposed to heighten K.M.'s judicially imposed minimum sentence, the Release Authority noted that K.M. has a sex offense in his criminal history and was in need of a juvenile sex offender assessment. In addition to the imposition of additional time beyond his judicially imposed minimum commitment, K.M. was recently transferred from one facility to another and was told to complete special programming as a condition precedent to his release. He is not sure whether the programming will be available before May or that he will be able to finish it in that time period. Both the imposition of additional time and the requirement that he complete special programming occurred outside of K.M.'s participation and he was not given the opportunity to challenge, deny, or rebut the information that lead to the Release Authority's decision.

8.      Plaintiff J.R. an 16 year old African-American female, arrived at Scioto Juvenile Correctional Facility in August 2006 to serve a 100 day judicially imposed minimum sentence for parole revocation. In September 2006, near the approximate date when her 100 day minimum should have expired due to detention credit, J.R. was ordered by the Release Authority to complete

the programming at the Freedom Center, a separate facility from Scioto, in order to be released. ODYS, however, failed to transport J.R. to the Freedom Center and she remained incarcerated at Scioto for over 5 months without the ability to complete the programming required for her release. Finally, in January 2007, J.R. was transferred to the Freedom Center to begin the 4 month treatment program there. Despite the fact that she will complete the program in May 2007, J.R. has now been given a projected release date of July 2, 2007. She will therefore serve over a year on a 100 day judicially imposed minimum commitment before she will even have the opportunity to be reviewed for release.

9.     Plaintiff, A.G., a 16 year old Hispanic male, was committed to ODYS after serving time at Parmadale, a community treatment center, for a third-degree felony domestic violence charge. He appeared in court for what be believed was a release hearing, but was instead blind-sided by his probation officer's request that he be violated and sent to ODYS. He was forced into pleading to the violation and was committed by the court to ODYS custody for a minimum of 6 months. At his disposition, the court told A.G. he would be released in 6 months or less and that he would be eligible for judicial release. He therefore had the expectation that he would receive a release review after 6 months or potentially earlier. A.G. arrived at ODYS in August of 2006 and was placed at Marion Juvenile Correctional Facility. Despite the fact that his judicially imposed minimum expired in February 2007, the Release Authority has informed A.G. that he will not be eligible for a release review until May 17, 2007. As grounds for increasing his minimum commitment, the Release Authority cited to a prior misdemeanor domestic violence charge against A.G. from 1999 when he was 9 years old. A.G. attempted to contact the Release Authority in writing to contest the extension

of his judicially imposed minimum, but was told by his assigned social worker that he was not allowed to send letters to the Release Authority.

10. Plaintiff J.S., a 17 year old white male, is presently in ODYS custody at Marion Juvenile Correctional Facility. He was committed to ODYS by the juvenile court to serve a minimum of 90 days on a parole revocation. He arrived at ODYS in June 2006 and expected to be released, or at a minimum reviewed for release, in September 2006. The Release Authority initially indicated to him that he would be eligible for release on October 19, 2006, a month longer than his judicially imposed minimum sentence. That date, however, came and went without J.S. being provided a new projected release date or any information about why he was continuing to be held or how he could challenge his commitment. J.S. was later told by the Release Authority he will not be released until June 21, 2007, meaning he will serve approximately a year in custody before having any meaningful opportunity to he reviewed for release.

11. Plaintiff P.T., a 15 year old African-American female, arrived at Scioto Juvenile Correctional Facility on May 27, 2005 after having served 39 days in a local detention center. At disposition, the juvenile court sentenced her to serve four concurrent 6 month minimum sentences for assault. She therefore should have been eligible to be reviewed for release on October 18, 2005. The Release Authority, however, initially extended her minimum sentence until December 19, 2005 without explanation. No further action was taken on her case until February 2007, when the Release Authority conducted a release review. It approved P.T. for release, but required her to remain incarcerated until June 9, 2007. Both the extension of P.T.'s judicially imposed minimum sentence and the release review process that determined her final release date occurred without her knowledge

or participation. P.T. will therefore serve over 2 years in ODYS custody on what was to be a 6 month minimum commitment.

## DEFENDANTS

12.    Defendant Ohio Department of Youth Services ("ODYS") is an agency of the State of Ohio mandated by Ohio Rev. Code § 5130.03 to control and manage all state institutions or facilities established or created for the training or rehabilitation of delinquent children committed to the Department. Pursuant to Ohio Rev. Code § 5139.04, ODYS must receive custody of children committed to it and house those children within an institution or community corrections facility.

13.    Defendant Thomas Stickrath is and at all relevant times has been the appointed Director of Youth Services. As the Director, he has the powers of a department head set forth in Chapter 121 of the Ohio Revised Code. These powers and duties include, but are not limited to, adopting rules for the government of the Department, the conduct of its officers and employees, the performance of its business, and the custody, use, and preservation of the Department's records and property. Any duties imposed by law on ODYS must be performed by or implemented by the Director. In addition, pursuant to Ohio Rev. Code § 5139.50(A), the Director is empowered to appoint the members of the Release Authority. He is sued in his official capacity only.

14.    Defendant Release Authority is a statutorily created, 5-member bureau of the Ohio Department of Youth Services. Among its other responsibilities, the Release Authority is charged with establishing policies for and conducting periodic reviews of the status of children in the custody of ODYS and setting or modifying release dates for incarcerated youth. In addition, the Release Authority is required to promulgate rules governing appeals of its release and discharge decisions.

8

15.     Defendant Sharon Haines is the appointed chairperson of the Release Authority. As chairperson, she functions as both the managing officer of and the official spokesperson for the Release Authority. She is also required to perform all necessary acts to ensure that the Release Authority satisfies its statutory obligations. She is sued in her official capacity only.

16.     Defendant C.Q. Morrison is an appointed member of the Release Authority. He is permitted, in conjunction with the remaining members of the bureau, to adopt policies governing the release of incarcerated juveniles, to gather and review information pertaining to individual youth, and to make final decisions concerning a child's readiness for release. He is sued in his official capacity only.

17.     Defendant Terry Kennedy Mancini is an appointed member of the Release Authority. She is permitted, in conjunction with the remaining members of the bureau, to adopt policies governing the release of incarcerated juveniles, to gather and review information pertaining to individual youth, and to make final decisions concerning a child's readiness for release. She is sued in her official capacity only.

18.     Defendant Jennifer Fears is an appointed member of the Release Authority. She is permitted, in conjunction with the remaining members of the bureau, to adopt policies governing the release of incarcerated juveniles, to gather and review information pertaining to individual youth, and to make final decisions concerning a child's readiness for release. She is sued in her official capacity only.

19.     Defendant Norm Hills is an appointed member of the Release Authority. He is permitted, in conjunction with the remaining members of the bureau, to adopt policies governing the release of incarcerated juveniles, to gather and review information pertaining to individual youth,

9

and to make final decisions concerning a child's readiness for release. He is sued in his official capacity only.

## CLASS ACTION

20. Plaintiffs bring this action on behalf of themselves and all others similarly pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. The class consists of all juveniles (approximately 2500 children per year) who are or will in the future be committed to ODYS and placed in an institution operated by or funded in part or in total by contract with ODYS.

21. The members of the class are so numerous that joinder of all members is impractical. In addition, there are questions of law and fact common to the members of the Plaintiff class regarding practices of Defendants and the claims of the members of the Plaintiff class. In addition, Defendants have acted on grounds generally applicable to the Plaintiff class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

22. The named Plaintiffs in this action, as well as Plaintiffs' counsel, will fairly and adequately protect the interests of the members of the class. All counsel for the Plaintiff class are either civil rights attorneys who have experience representing individuals in federal class action suits or criminal defense attorneys with extensive backgrounds in juvenile and criminal law.

## STATEMENT OF THE FACTS

### Ohio's Juvenile Sentencing Scheme

23. Delinquent children in Ohio are sentenced according to a complicated and indeterminate disposition scheme that punishes youth based on an array of factors, including the offense level, the characteristics of the offense, the youth's criminal history, and his age. Certain

10

youth are labeled as serious youthful offenders, either of a mandatory or discretionary nature, and are then sentenced more severely than those youth subject to treatment as traditional juvenile offenders.

24.     Subject to few minor exceptions, traditional juvenile offenders are committed to ODYS for indefinite periods that include both a minimum period of time before which the youth cannot be released and a maximum sentence which generally expires when the child turns 21. For example, under Ohio Rev. Code § 2152.16(A)(1)(e), a child who commits an offense that would be a third, fourth, or fifth degree felony if committed by an adult is can be committed to ODYS for "an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of twenty-one years of age." Similarly, children committing non-violent or non-sexually oriented felonies of the first and second degree are sentenced to serve no less than one year and no longer than the child's 21st birthday.

25.     In either case, the juvenile court retains control over the length of the minimum commitment and the statutory minimum can accordingly be adjusted upwards as part of the court's final disposition. As such, each child who is committed to ODYS custody has been sentenced to a judicially imposed minimum sentence, be it the statutory mandatory minimum or some other fixed period of time imposed by the court.

26.     The judicially imposed minimum commitment is a key component of a juvenile's disposition because it determines the date upon which a juvenile becomes eligible for review to be released. *See* Ohio Rev. Code § 2152.16. In addition, the judicially imposed minimum sentence is significant because, while the juvenile court retains jurisdiction over the case for the purpose of early release during the minimum sentence, youth are no longer eligible for judicial release once the

11

minimum sentence has expired. *See* Ohio Rev. Code § 2152.22. This combination of statutes creates the expectation that juveniles will have the opportunity for release at the expiration of the judicially imposed minimum sentence.

### The Release Authority and Matrix Time

27.     The Release Authority is statutorily vested with the authority to create rules and regulations regarding the release of juveniles in ODYS custody and to make release decisions in according with its promulgated rules.

28.     In accordance with these procedures, the Release Authority must establish a presumptive release date, or the date upon which a youth's indeterminate sentence will be completed. The Release Authority establishes the presumptive release date when a child is initially taken into to the custody of ODYS and is housed at the reception center at Scioto. The Release Authority must also conduct a release review approximately 45 days prior to the expiration of the presumptive release date. During the release review, the Release Authority determines whether a particular child will be released from custody or will instead be required to serve additional time.

29.     Despite the expectation of release at the end of a juvenile's judicially imposed minimum sentence, the Release Authority routinely refuses to conduct a release review at the expiration of the judicially imposed minimum commitment or to afford juveniles the opportunity for release at that time. Instead, the Release Authority computes the presumptive release date, which is a separate minimum sentence that each juvenile is required to serve before he or she becomes eligible for a release review.

30.     In many cases, the presumptive release date far exceeds the judicially imposed minimum sentence. In this regard, the Release Authority repeatedly engages in the judicial function

12

of sentencing by in effect extending the minimum sentences incarcerated juveniles are required to serve.

31.     The Release Authority uses an assessment tool known as the YO-LSI Assessment of Risk and Needs to help compute the presumptive release date. The YO-LSI is often administered by staff untrained in its utilization and is generally completed in about an hour. The instrument considers eight separate domains, including prior and current offenses, attitudes/orientations, family circumstances and parenting, education, peer relations, substance abuse, leisure/recreation, and personality and behavior, factors generally already considered by the juvenile court in setting a child's minimum sentence, and some of which are beyond the child's control.     Additionally, the YO-LSI is intended not only to predict risk of failure (risk classification), but also to identify treatment needs to reduce risk. ODYS uses the YO-LSI only for initial classification, and not to identify such needs. Further, reassessments are not routinely conducted which can result in lower assessment scores by ODYS. Finally, ODYS has failed to norm the instrument to this particular population as recommended for greater accuracy. As it is used, the YO-LSI is not an appropriate instrument for classifying youth based upon risk.

32.     Nevertheless, the Release Authority relies in large part upon the YO-LSI to compute a youth's presumptive release date. Once a YO-LSI score is calculated, it is placed into a grid known as the Release Matrix. The horizontal axis of the Matrix contains four columns that are graduated for the severity of the YO-LSI risk and the vertical axis contains seven columns that vary by offense type as follows:

13

RELEASE MATRIX

| Offense/YO-LSI | Low Risk | Moderate Risk | High Risk | Very High Risk |
|---|---|---|---|---|
| Felony 5 | 2-6 months<br>core = 4 | 4-6 months<br>core = 5 | 5-7 months<br>core = 6 | 6-8 months<br>core = 7 |
| Felony 4 | 2-6 months<br>core = 4 | 4-6 months<br>core = 5 | 5-9 months<br>core = 7 | 6-10 months<br>core = 8 |
| Felony 3 | 4-6 months<br>core = 5 | 5-7 months<br>core = 6 | 6-10 months<br>core = 8 | 7-11 months<br>core = 9 |
| Felony 2 | 8-12 months<br>core = 10 | 10-14 months<br>core = 12 | 12-18 months<br>core = 15 | 14-22 months<br>core = 18 |
| Felony 1 | 9-13 months<br>core = 11 | 11-16 months<br>core = 13 | 12-20 months<br>core = 16 | 14-30 months<br>core = 22 |
| Category 2 | 10-15 months<br>core = 13 | 12-16 months<br>core = 14 | 12-24 months<br>core = 18 | 14-34 months<br>core = 24 |
| Category 1 | Includes youth 12-15 years of age who have committed attempted aggravated murder of attempted murder. Will serve a minimum of six to seven years, or until age twenty-one. | | | |

33.     Once the Release Authority has computed a range of imprisonment in the Matrix, the child receives the assigned core minimum sentence assigned to his particular place on the grid unless aggravating or mitigating factors warrant adjusting the time upwards or downwards.

34.     In accordance with this system, the practice of re-sentencing a child to a higher minimum sentence than was imposed by the court at disposition is known as giving a child "Matrix time."

35.     Hundreds of youth in ODYS custody are given Matrix time every year. This fact is significant because the Release Authority refuses to review children for release until the expiration of their Matrix time, rather than at the completion of their judicially imposed minimum sentence.

14

36.     Equally problematic is the lack of an appeal procedure for challenging the imposition of Matrix time.  The Release Authority indicates it will recalculate the presumptive release date when an error is made, but children are expressly prohibited from seeking such a review.  In fact, the process for appeal previously existed in the Ohio Administrative Code but that section was repealed and juveniles can no longer avail themselves of an administrative appeal when they are assessed Matrix time.

### The Programming Problem

37.     Frequently, youth who are given Matrix time in excess of the judicially imposed minimum are ordered to complete programming that may or may not be available before the child's presumptive release date.  For example, sex offenders and youth with substance abuse histories are frequently required to undergo sex offender and drug and alcohol treatment programs at ODYS.

38.     These programs are offered at varying intervals of time that do not coincide with a child's particularized release date.  As such, many youth, including Plaintiffs K.M. and J.R. have had their release reviews, and therefore their opportunities for release from incarceration, extended far beyond the judicially imposed minimum due to a lack of available programming.

39.     Just as there is no administrative appeals mechanism for challenging Matrix time, there is also no procedure by which a juvenile can challenge the Release Authority's decision to postpone meaningful release review until a youth completes specific programming not available until after the child is scheduled to be released.

**Damage to the Individual Plaintiffs**

40.     The Release Authority's practice of imposing Matrix time and of refusing to conduct release reviews until a child completes unavailable programming has severely harmed each of the named Plaintiffs in this lawsuit.

41.     All of the children who are parties to this lawsuit have been given Matrix time in excess of their judicially proscribed minimum sentences.  These heightened minimum sentences range from an additional two months, in J.J.'s case, to well over a year in P.T.'s case.  The imposition of Matrix time has prejudiced each child because it has been used to deny him or her the opportunity for a meaningful release review.

42.     In addition, many of the named Plaintiffs have also been harmed by ODYS' failure to provide, in a timely fashion, the programming necessary for their release.  For example, K.M. and J.R. have both had their opportunities for release pass by without any action by the Release Authority because the programming they were ordered to complete was either not available or not administered when it should have been.

43.     As a result, many youth in ODYS custody are being denied the opportunity for meaningful release reviews absent due process and based on arbitrary factors outside of their control.

## CAUSE OF ACTION

### Claim One:
### Violation of the Right to Procedural Due Process

44.     Plaintiffs hereby incorporate by reference each and every allegation set forth above.

16

45.     The Fifth and Fourteenth Amendments to the United States Constitution and analogous provisions of the Ohio Constitution require that individuals be afforded due process when a liberty interest is at stake.

46.     The opportunity to be released from confinement constitutes a protected liberty interest for which due process is required.  Ohio's juvenile sentencing scheme creates a protected expectation that incarcerated juveniles will be given the opportunity to be released at the expiration of their judicially imposed minimum commitments.

47.     The policy, practice, and custom of the Release Authority of refusing a meaningful review for those juveniles who are resentenced to minimum commitments in excess of the judicially imposed minimum violates the principles of due process.

48.     In addition, the practice of denying incarcerated juveniles the programming required for their release, or even for the opportunity to be reviewed for release, violates the right to due process.

### Claim Two:
### Violation of Separation of Powers Doctrine

49.     Plaintiffs hereby incorporate by reference each and every allegation set forth above.

50.     Sentencing powers are inherently judiciary and the remaining branches of government are without the power to encroach upon the function of the courts to sentence juveniles.

51.     When the Release Authority assesses Matrix time by computing a presumptive release date in excess of the judicially imposed minimum commitment, the Release Authority is usurping judicial authority by in essence re-sentencing juveniles.  In addition, because the juvenile court loses jurisdiction over a particular youth at the expiration of his judicially imposed minimum, the Release

17

Authority's practice of extending the mandatory minimum commitment deprives the juvenile courts of their statutorily granted jurisdiction.

52.    This practice violates the doctrine of separation of powers.

### Claim Three:
### Denial of Right to Counsel

53.    Plaintiffs hereby incorporate by reference each and every allegation set forth above.

54.    Juveniles have a protected constitutional right to the assistance of counsel at all critical stages of delinquency proceedings against them, including at disposition when a sentence is imposed.

55.    The Release Authority in essence engages in re-sentencing when it computes Matrix time and increases the judicially imposed minimum sentence a juvenile is required to serve before becoming eligible for release review.

56.    No counsel is present for the interviews conducted by or at the request of the Release Authority for the purposes of administering the YO-LSI instrument, which determines whether a particular youth will receive Matrix time.  Nor are juveniles informed of their right to counsel at this stage of the proceedings or permitted to make knowing, informed, and voluntary waivers of that right.

57.    The practice of denying juveniles the right to counsel in computing the presumptive release date and of failing to inform juveniles of the right to counsel violates the Sixth Amendment and related Ohio guarantees.

### Claim Four:
### Double Jeopardy

58.    Plaintiffs hereby incorporate by reference each and every allegation set forth above.

18

59.     The Fifth Amendment to the United States Constitution and related provisions of the Ohio Constitution protect criminal defendants from being sentenced twice for the same crime.

60.     By sentencing juveniles to serve additional time beyond their judicially imposed minimum sentences based largely upon factors already known to the sentencing court, the Release Authority is in essence ordering incarcerated juveniles to serve two sentences for a single crime.

61.     This practice, policy, and custom violates the Fifth Amendment double jeopardy prohibition and related Ohio guarantees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that on their behalf and on the behalf of all others they seek to represent, that this Court:

1.     Assume jurisdiction of this cause and set this case for a prompt hearing;

2.     Permit Plaintiffs to proceed in this action under their initials as opposed to their full legal names in order to protect their anonymity;

3.     Determine by order, pursuant to Rule 23(b)(2) and (c)(1) of the Federal Rules of Civil Procedure, that this action be maintained as a class action on behalf of the class defined herein;

4.     Declare that the policy, practice, and custom of the Release Authority of enhancing judicially imposed minimum sentences, thereby denying incarcerated juveniles the opportunity for release, violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and related provisions of the Ohio Constitution and violates the doctrine of separation of powers;

5.     Declare that the policy, practice, and custom of the Release Authority of requiring juveniles to complete unavailable programming, thereby denying incarcerated juveniles the

opportunity for release, violates the Fifth and Fourteenth Amendments to the United States Constitution and related provisions of the Ohio Constitution;

6. Preliminarily and permanently enjoin Defendants from continuing the practice of enhancing judicially imposed minimum sentences and requiring unavailable programming;

7. Award Plaintiffs reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988; and

8. Grant such other relief to Plaintiffs and all others similarly situated as the Court deems to be just, proper, and equitable under the circumstances.

Respectfully submitted,

*Jennifer M. Kinsley* By Authorization S.A.T
JENNIFER M. KINSLEY (Ohio Bar No. 0071629)
Sirkin Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone: (513) 721-4876

KIM BROOKS TANDY (Ohio Bar No. 0076173)
Children's Law Center, Inc.
104 East Seventh Street
Covington, Kentucky 41011
Telephone: (859) 431-3313

DAVID A. SINGLETON (Ohio Bar No. 0074556)
Ohio Justice and Policy Center
617 Vine Street, Suite 1309
Cincinnati, Ohio 45202
Telephone: (513) 421-1108

Counsel for Plaintiffs

Of Counsel:
Janet Moore (Ohio Bar No. 0080506)
Ohio Justice and Policy Center
617 Vine Street, Suite 1309
Cincinnati, Ohio 45202
Telephone: (513) 421-1108

I.(c)

Kim Brooks Tandy (Ohio Bar No. 0076173)
Children's Law Center, Inc.
104 East Seventh Street
Covington, Kentucky 41011
Telephone: (859) 431-3313
Telecopier: (859) 655-7553

Jennifer M. Kinsley (Ohio Bar No. 0071629)
Sirkin, Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone: (513) 721-4876
Telecopier: (513) 721-0876

David A. Singleton (Ohio Bar No. 0074556)
Ohio Justice and Policy Center
617 Vine Street, Suite 1309
Cincinnati, Ohio 45202
Telephone: (513) 421-1108
Telecopier: (513) 562-3200